# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Morton Denlow | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1810 | **DATE** | 12/9/2002 |
| **CASE TITLE** | | Georgia Robinson vs. Jo Anne B. Barnhart | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Commissioner's motion for summary judgment [23-1] is granted, the Claimant's motion for summary judgment [22-1,22-2] is denied, and the Commissioner's decision finding Claimant not disabled is affirmed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | **DEC 1 0 2002** | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | CLERK | 12/9/2002 | |
| DK | courtroom deputy's initials | | 02 DEC -9 PM 4:24 | date mailed notice | |
| | | | FILED-10 | DK | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

Document Number

25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GEORGIA ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 02 C 1810 |
| | ) | |
| vs. | ) | Magistrate Judge Morton Denlow |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**DOCKETED**
*DEC 1 0 2002*

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This case comes before the Court for a review of the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying Plaintiff Georgia Robinson ("Claimant" or "Robinson") supplementary security income benefits ("SSI"). Claimant seeks judicial review of the Commissioner's final decision. The matter comes before the Court on cross-motions for summary judgment. The principle issue raised by Claimant is whether the Administrative Law Judge made a sufficient credibility determination in accordance with Social Security Ruling 96-7p and *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001). For the reasons set forth below, the Court affirms the Commissioner's decision.

25

## II. PROCEDURAL BACKGROUND

Claimant filed her application for SSI benefits on February 17, 1998. R. 118-21. Her application was denied on May 7, 1998, and on May 13, 1998 she filed a timely request for reconsideration. R. 72-77. On June 24, 1998, her claim was denied at the reconsideration level. R. 78-80.

On July 14, 1998, Claimant filed a timely request for hearing. R. 81-83. A hearing was held before ALJ Richard J. Boyle on June 6, 1999 at which Claimant, her aunt, Beula Smith, Medical Expert Dr. William Buckingham and Vocational Expert William Schweitz testified. R. 26-69. On August 27, 1999, the ALJ issued his decision finding Claimant not disabled because she could perform a significant number of light jobs. R. 11-19. The Claimant seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). The Court conducted oral argument on the cross-motions for summary judgment on December 3, 2002.

## III. STANDARD OF REVIEW

Judicial review of a Commissioner's final decision is governed by 42 U.S.C. § 405(g), which provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." An ALJ's decision becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). Under such circumstances, the decision reviewed by the district court is the decision of the ALJ. *Eads v. Secretary of the Dept. Of*

*Health & Human Serv.*, 983 F.2d 815, 816 (7th Cir. 1993). A reviewing court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

Judicial review is limited to determining whether the ALJ applied the correct legal standards in reaching his decision and whether there is substantial evidence in the record to support his findings. *Schoenfeld v. Apfel*, 237 F.3d 788, 792 (7th Cir. 2001); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The court may reverse the Commissioner's decision only if the evidence "compels" reversal, not merely because the evidence supports a contrary decision. *INS v. Zacarias*, 502 U.S. 478, 481, n.1 (1992). The Act gives a court the power to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## IV. THE EVIDENCE

### A.    CLAIMANT'S HEARING TESTIMONY AND REPORTS

Claimant was fifty years old on the date of the ALJ's decision. R. 31. She has a high school diploma and past work experience as a packer. R. 31-33. She last worked in late 1985 when she was laid off. R. 34. She claims a disability onset date of August, 1989, four years after she was laid off. R. 131.

She testified she cannot work due to shortness of breath and soreness throughout her body. R. 35-38. She was admitted to a hospital in January 1998 or 1999 for chest pain but was discharged the next day after the admitting physician found her "heart was all right." R. 43-44. She explained that due to shortness of breath she could walk only one block before resting. R. 44-46. She had difficulty bending and squatting, but not sitting. R. 45. She dropped things, experienced a numbness in her hands and had problems sleeping. R. 45, 48-49, 170. She cooked and used public transportation. R. 46. She shopped with the help of her son, attended church services and her son's school activities. R. 47, 144. She typically stayed home. R. 50.

### B.    TESTIMONY OF BEULA SMITH

Claimant's aunt, Beula Smith, testified she saw Claimant each week at church. R. 53. She observed swelling in Claimant's hands, ankles and elbows, a shortness of breath and difficulty in holding objects and walking. R. 54-55.

### C.    MEDICAL EXPERT TESTIMONY

Dr. William Buckingham, a pulmonologist, who treated sarcoidosis patients, reviewed the record and testified as a medical expert. R. 55. Dr. Buckingham testified Claimant had a diagnosis of sarcoidosis, but a proctoscopic biopsy showed only evidence of scarring but no evidence of active disease in Claimant's lungs. R. 56-57. Dr. Buckingham testified that sarcoidosis was a disease of unknown etiology, that frequently involved the lungs but could involve the joints or any part of the body. R. 57. He indicated that sarcoidosis could cause

4

the Claimant's symptoms. *Id*. Dr. Buckingham indicated that Claimant would have difficulty operating near irritating fumes. R. 58. Due to mild carpal tunnel syndrome in her right hand, Claimant would be precluded from repetitive, typing-type operations such as data entry, but would not have difficulty with gross and fine manipulations, such as full-time assembly work. *Id*.

Regarding Claimant's allegations about her ability to stand and walk, Dr. Buckingham testified that they were "not consistent with the degree of disease documented in the records. In other words, there is nothing in the records that would prevent her from standing or walking." R. 60. Dr. Buckingham attributed Claimant's three-minute treadmill test as a problem of conditioning because "there is no evidence of any ischemia on the treadmill tests." Id. Dr. Buckingham concluded that Claimant was not limited to sedentary level work but could perform light work because there is "nothing in the record that would indicate she could not do it." R. 61. Dr. Buckingham acknowledged Claimant's subjective complaints of aches and pains, but noted that there was "no measurements of decreased motion of any of the joint systems, there's no measurements of any loss of function." R. 61.

## D.    OTHER MEDICAL EVIDENCE

In January 1998, Claimant appeared at the emergency room complaining of chest pain and non-associated tingling in her left upper arm. R. 211-13. Claimant denied difficulty breathing, but reported occasional shortness of breath. *Id*. Claimant's chest pain resolved with nitroglycerin. R. 215. In February 1998, Claimant underwent a bronchoscopy. R. 186.

An admission assessment revealed that her lungs were clear and she exhibited no cough or shortness of breath. R. 188. She denied any problems sleeping. *Id.*

In March 1998, Dr. Alvaro S. Rios examined Claimant for the state agency. R. 265. Claimant reported a history of shortness of breath and an inability to walk more than one block. R. 265. Physical examination of Claimant's lungs revealed evidence of mild rales and wheezes but no crackles or prolongation of expiratory time. R. 266. She exhibited no edema, cyanosis or clubbing in her extremities, and she had painless full range of motion of all joints. *Id.* Her dexterity in her right dominant hand was normal with no problems picking up small objects from the table, or buttoning or unbuttoning. *Id.* Claimant had normal hand grip and normal gait, and she was neurologically intact. R. 266-67. Claimant's chest x-ray revealed bilateral interstitial infiltrates in her lower lungs, but no evidence of hilar congestion or poor distribution of flow. R. 267. He noted that Claimant was recently diagnosed with sarcoidosis, but noted that steroid therapy had provided "significant relief." *Id.*

In April and June 1998, state agency physicians reviewed the medical evidence, considered Claimant's sarcoidosis and arthritis, and concluded that she could lift 20 pounds occasionally and ten pounds frequently, sit, stand, and walk for six hours each in an eight-hour workday, and could push and pull without limitation. R. 301-07. Claimant could occasionally climb, balance, stoop, kneel, crouch and crawl, and needed to avoid moderate exposure to fumes, odors, dusts, gases, and poor ventilation. R. 302-04.

In July 1998, Claimant underwent nerve and EMG studies of her right hand for complaints of numbness and pain. R. 184. She denied any weakness or abnormal sensation, and physical examination revealed intact sensation and normal strength and reflexes. R. 184. Dr. Wannapha Petchkrua indicated that testing suggested evidence of right carpal tunnel syndrome, but no evidence of peripheral neuropathy. R. 185, 325-26.

In August 1998, Claimant was seen in follow-up for her complaints of numbness in her palms. R. 353. Physical examination revealed no edema and full range of motion in her extremities, mild plantar tenderness bilaterally and reported numbness in her right palm. R. 353.

In March 1999, Dr. Patricia R. Bush reviewed the medical evidence and noted Claimant's history of sarcoidosis. R. 367. Dr. Bush concluded that the medical evidence in the file supports the residual functional capacity assessment for light work as indicated by the state agency reviewing physicians. *Id.*

Dr. Michael Colandrea reviewed the medical evidence and concluded Claimant had a severe impairment that did not meet a listing. R. 368. He indicated Claimant could lift 20 pounds occasionally and ten pounds frequently, and sit, stand and walk for six hours each with no limitation in pushing and pulling. R. 370. He concluded that she could perform light work. R. 369-76.

## E.    VOCATIONAL EXPERT TESTIMONY

The ALJ asked the Vocational Expert, William Schweitz, a hypothetical question regarding the existence of jobs available to a person of Claimant's age, education and experience who could perform light work, but could not do more than occasional climbing, balancing, stooping, kneeling, crawling or crouching, and could not work at a job involving even moderate exposure to pulmonary irritants. R. 64.  The VE testified that there would be a wide range of jobs such a person could perform including: packaging jobs involving electronic parts, assembly, and visual inspection. R. 65-66.  In total, the VE indicated that such a total of 35,000 to 40,000 unskilled jobs would be available. R. 66-67.

## V. LEGAL ANALYSIS

### A.    THERE IS SUBSTANTIAL EVIDENCE IN THE RECORD TO SUPPORT THE ALJ'S CONCLUSION THAT CLAIMANT WAS NOT DISABLED BECAUSE SHE COULD PERFORM LIGHT WORK

There is substantial medical evidence to support the ALJ's conclusion that Claimant was not disabled because she retained the residual functional capacity to perform a range of light work.  The ALJ's RFC assessment was directly supported by the Medical Expert, Dr. Buckingham, a pulmonologist who treats sarcoidosis, as well as Drs. Conroy, Bush and Colandrea, who each found that Claimant could perform a range of light work. R. 16-17, 60-61, 300-01, 367, 370.  Claimant presented no contrary opinions from any physician.

## B.    THE ALJ'S CREDIBILITY FINDING WAS PROPERLY EXPLAINED

In the face of this overwhelming medical evidence, Claimant requests this Court to reverse and remand the ALJ's decision based on the ALJ's credibility finding which the Claimant contends does not comport with Social Security Ruling 96-7p and the Seventh Circuit decision in Zurawski v. Halter, 245 F.3d 881 (7th Cir. 2001).

### 1.    SSR 96-7p

SSR 96-7p is a policy interpretation ruling which became effective on July 2, 1996. It addresses the ALJ's responsibility in making a credibility finding regarding a claimant's statements about pain or other symptoms and its functional effects.  In particular, this policy interpretation ruling makes clear that:

> 5.  It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."

SSR 96-7p requires the ALJ to consider the claimant's "statements about symptoms with the rest of the relevant evidence in the case record" and to consider the entire case record, including objective medical evidence, and other relevant evidence in coming to a credibility determination. SSR 96-7p ¶¶ 1-4. This SSR essentially requires an ALJ to "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 245 F.3d 863, 872 (7th Cir. 2000).

## 2. Zurawski v. Halter

In *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001), the Seventh Circuit reversed and remanded a case were the ALJ found the Claimant's complaints of disabling pain "not entirely credible due to the inconsistencies with the objective medical evidence, and inconsistencies with daily activities." *Id.* at 887. In *Zurawski*, the Court noted that the ALJ confined her discussion to the medical evidence which showed claimant capable of returning to work, but did not include a discussion of the medical evidence showing claimant had a bulging disc and degenerative disc disease which only one doctor had considered, and that claimant had epidural injections and was prescribed medications to alleviate pain and depression. *Id.* at 888. The Court held that the ALJ's decision was deficient because "we are unable to tell whether the ALJ investigated 'all avenues' that relate to [Claimant's] complaints of pain because her decision offers no clue as to whether she *examined* the full range of medical evidence as it relates to his claim." *Id.* Because of the incompleteness of the analysis, the Court remanded the case for greater elaboration in order to "conduct a reevaluation of Zurawski's complaints of pain with due regard for the full range of medical evidence." *Id.*

## 3. The ALJ's Credibility Determination Was Made With Due Regard for the Full Range of Medical Evidence.

In deciding whether Claimant met her burden of establishing a disability, the ALJ applied the standard five-step inquiry. See 20 C.F.R. § 404.1520. The ALJ reviewed Claimant's alleged symptoms, impairments and limitations and explained why he accepted

some and rejected others. For example, on the issue of arthritis and the limitations imposed, the ALJ referred to Dr. Rios' conclusion that Claimant has a "History of arthritis with normal range of motion presently." R. 16. With respect to the limitations arising from Claimant's sarcoidosis, the ALJ found that "this condition does impose some functional limitations, which are reflected in the medical expert opinion that claimant has a residual functional capacity for a wide range of light work activity." R. 16-17.

After carefully reviewing her symptoms and the evidence, the ALJ made the following statement regarding her credibility:

> Based on the state agency medical expert opinion and Dr. Buckingham's testimony, claimant's complaints are excessive and overreach the objective findings in the case (Social Security Ruling 96-7p). The medical expert opinions are consistent and are given controlling weight (Social Security Rulings 96-2p, 96-5p, 96-6p.

R. 17. In its findings, the ALJ stated that the "claimants allegations of disabling symptoms and limitations are not fully credible for the reasons set forth in the body of this decision." R. 18.

This case is clearly distinguishable from *Zurawski*. First, there is simply no contrary medical evidence which the ALJ failed to discuss. Second, the ALJ carefully reviewed Claimant's symptoms and explained why he concluded she could perform light work. Third, he explained his credibility findings based on the testimony and medical reports of the doctors who all concluded she could perform light work. Unlike *Zurawski*, the ALJ here examined Claimant's complaints of pain and he examined the full range of medical evidence as it relates to the claim.

The Seventh Circuit has cautioned ALJ's not to substitute their judgment for that of medical professionals. *Clifford v. Apfel*, 227 F.3d 863, 970 (7th Cir. 2000); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996); *Wilder v. Chater*, 64 F.3d 335, 337 (7th Cir. 1995). Claimant's argument amounts to asking the ALJ to close his eyes to the uniform medical conclusions that Claimant can perform light work. He properly explained why he rejected that argument.

## VI. CONCLUSION

The ALJ's opinion carefully explains why he found Claimant capable of performing light work. This conclusion is supported by overwhelming medical evidence which more than meets the substantial evidence standard. The ALJ's credibility finding complies with SSR 96-7 and *Zurawski*. For the reasons set forth in this opinion, **the Commissioner's motion for summary judgment is granted, the Claimant's motion for summary judgment is denied, and the Commissioner's decision finding Claimant not disabled is affirmed.**

**SO ORDERED THIS 9th DAY OF DECEMBER, 2002.**

_____

**MORTON DENLOW**
**United States Magistrate Judge**

**Copies Mailed To:**

Marcie E. Goldbloom
Daley, DeBofsky & Bryant
One North LaSalle
Suite 3800
Chicago, Illinois 60602
Attorney for Plaintiff

Curt P. Marceille
Special Assistant United States Attorney
Office of the Chief Counsel
Social Security Administration
200 West Adams St., 30th Floor
Chicago, Illinois 60606
Attorney for Defendant